## Commonwealth v. Kardosh.

*Criminal procedure—Application to be released from recognizance—Bail.*

1. Where a defendant has been arrested and has given bail for a hearing before an alderman, he cannot have the alleged misconduct of the alderman reviewed by the court on a rule to show cause.

2. Principles governing the amount of bail to be required, considered.

Rule on alderman and district attorney to show cause why petition by defendant to be released from his recognizance and discharged without day, and for a reduction of amount of bail, should not be granted. Q. S. Northampton Co.

*J. Cullen Ganey,* Assistant District Attorney, *Frank P. McCluskey* and *Asher Seip,* for Commonwealth.

*Smith & Paff* and *John D. Hoffman,* for defendant.

STEWART, P. J., March 21, 1927.—The defendant presented his petition to us on Feb. 28, 1927, alleging that he was arrested on Feb. 19, 1927; was brought before an alderman; demanded to see a copy of the complaint, and same was not shown him; that the alderman fixed Friday, March 4, 1927, for a hearing, and held him under $5000 bail for the hearing, which defend-

ant furnished under protest; that subsequently he demanded to see the complaint, and that same was refused; that he is not guilty of any crime; and that he has been held under very excessive bail. He prayed that he should be released from recognizance, and discharged without day. Subsequently, the time fixed for the hearing before the alderman was extended to March 21, 1927. With considerable hesitation, we granted a rule upon the alderman and upon the district attorney to show cause why the petition should not be granted. We were induced to grant the rule because the learned counsel for the defendant brought to our attention the late case of Com. v. Fedulla, 89 Pa. Superior Ct. 244. The opinion in that case is by President Judge Porter. He said: "The transcript returned by the justice disclosed that the defendant had, after a hearing, on May 19, 1925, given bail for his appearance at the Court of Quarter Sessions to answer the charge. The indictment upon which he was tried was not found by the grand jury until Sept. 23, 1925. It thus appeared that there was ample time, before indictment found, for the defendant to challenge the legality of his arrest and being held for trial to answer the charge by a proceeding to be discharged from custody, or to be released from his recognizance and discharged without day. Instead of doing this, he waited until he was called for trial, when he moved to quash the indictment upon the ground of the illegality of his arrest; it was then too late to raise the question by a motion to quash the indictment." Counsel for defendant now contends that the words "be released from his recognizance and discharged without day" plainly indicate that the Superior Court had in mind a proceeding like the present one, wherein the committing magistrate and the district attorney would be compelled to show cause why they were proceeding against the defendant in the manner alleged in the petition. No case has been cited to us where any court gave its approval to a proceeding like the present. The leading case seems to be Com. v. Brennan, 193 Pa. 567. The assignment of error in that case was the lower court's refusal to quash the indictment. The Supreme Court said: "The defendant was tried upon an indictment found regularly by the grand jury upon examination of witnesses after information made before a magistrate. A trial was had upon the merits and the defendant was duly convicted of murder of the first degree. On the trial, a motion was made to quash the indictment because it was not found after an information sworn to and subscribed before the committing magistrate. While the defendant might have been heard on that subject upon a proceeding to be discharged from custody on the ground of an illegal commitment, it is certainly too late after indictment found upon the trial of the cause. The finding of the indictment cannot be invalidated for any such reason." It is to be noted that the Supreme Court distinctly said that the defendant could have been heard on the subject complained of upon a "proceeding to be discharged from custody." That case was followed in Com. v. Mallini, 214 Pa. 50. It has been followed by the Superior Court in a number of cases. In all of them, they refer to raising the question upon a "proceeding to be discharged from custody." See Com. v. Dingman, 26 Pa. Superior Ct. 615; Com. v. Hans, 68 Pa. Superior Ct. 275; Com. v. Keegan, 70 Pa. Superior Ct. 436; Com. v. Stanley, 78 Pa. Superior Ct. 452; Com. v. Mazarella, 86 Pa. Superior Ct. 382. In Com. v. Green, 185 Pa. 641, which was a petition for *habeas corpus* and *certiorari*, where the defendant had been held by two of the judges of Philadelphia County for a hearing in excessive bail, Mr. Chief Justice Sterrett said: "Without referring in detail to the averments contained in the defendant's petition for *certiorari*, etc., it is sufficient to say that the sole object of the writ is to bring up the record in the proceedings before

the two judges therein referred to, sitting as justices of the peace, etc., as ancillary to the *habeas corpus* for which a petition was presented by the defendant as relator at the same time. The propriety of this practice in proper cases cannot be doubted. It has been recognized and approved in several cases, among which are Com. ex rel. Keely v. Perkins, Superintendent, etc., 124 Pa. 36, and Com. ex rel. v. Bell, 145 Pa. 374. But an essential prerequisite to the granting of any such special writ of *certiorari* is a meritorious and well-grounded petition for a *habeas corpus*. If that is wanting, the *certiorari* should be refused and the petition therefor dismissed." He then showed that the defendant had given bail to appear before the judge, and then had waived a hearing, and gave bail for court, and then voluntarily surrendered himself to the sheriff. Judge Sterrett then said: "During the twenty days that elapsed between the giving of the recognizance, on April 7, 1898, to appear in the Court of Quarter Sessions when required and the date of said surrender to the sheriff, it does not appear that any application was made to the court before which the defendant was recognized to appear, etc., for the correction of any error in the proceedings before the judge sitting as committing magistrate, either in holding the defendant for appearance in court or in demanding excessive bail. Without availing himself of that regular, legitimate and ordinary means of redress, he, by his own act, deprived himself of his liberty and thus made a case that was supposed to require the direct intervention of this court. It requires neither argument nor citation of authority to show that such practice is essentially bad and should not be encouraged." We think it clear from a consideration of all of the above citations that as long as the defendant is not in actual custody he is not entitled to the relief asked for, and that it could only be granted by *habeas corpus*. This has been the practice of our courts. In Com. v. Walton, 1 Northamp. Co. Repr. 289, the syllabus is: "Where the accused has waived a hearing and given bail to appear at court, but is subsequently surrendered up, the court will not go into the merits of the case on a *habeas corpus* proceeding unless satisfied that he could not procure bail and would be unjustly detained." In Com. v. Doran, 4 Northamp. Co. Repr. 307, the syllabus is: "A writ of *habeas corpus* having been granted on the petition of a defendant representing that he was in the custody of a constable under a commitment, and it appearing at the hearing that the constable, instead of serving the commitment, allowed the defendant to go about his business, the writ was dismissed." In Com. ex rel. Reeder v. Fenicle, 6 Northamp. Co. Repr. 94, the syllabus is: "No hearing can be had upon a writ of *habeas corpus* in advance of trial if the petitioner is under bail and voluntarily procures himself to be surrendered for the purpose of applying for release." Upon the hearing, the district attorney tendered defendant a copy of the complaint, and the original has been handed to us. We have read it. It charged the defendant with criminal libel in publishing an article which, the Commonwealth alleges, referred to the officers of the Gosztonyi Savings and Trust Company, and which caused a run on that trust company. The article does not mention the Gosztonyi Savings and Trust Company, but the complaint contains innuendoes that are intended to connect it with them. We think that as a complaint it is fuller than usual. Whether an indictment drawn upon it will stand the test of Com. v. Swallow, 8 Pa. Superior Ct. 539, and other authorities, is not before us at the present time. While it is true that it might be more convenient to pass upon matters such as were attempted to be raised in the authorities cited above, yet the duty of a committing magistrate is well understood, and the court ought not to interfere with it unless the defendant is actually oppressed, and while he

will not be permitted on his trial to raise technical questions, which was the practice prior to Com. v. Brennan, 193 Pa. 567, yet defendant is not at all injured, because the questions that formerly were raised were technical and any real defence can be brought out on the trial.

One other matter remains. The alderman, the prosecutor and the assistant district attorney were examined as to the amount of bail. The assistant district attorney set the bail at $5000 on account of the seriousness of the complaint. He had been informed about the large amount of money that had been withdrawn from the bank. The alderman said he fixed it on account of the seriousness of the charge. The right to give bail for trial is granted by the Constitution. After conviction and before sentence, the giving of bail is a matter in the discretion of the court. Article I, section 13, provides: "Excessive bail shall not be required." Article I, section 14, provides: "All prisoners shall be bailable by sufficient sureties, unless for capital offences." In Wharton's Criminal Pleading and Practice, § 76, it is said: "It has been sometimes argued that bail should be arbitrarily graded to meet the heinousness of the offence. But this is a dangerous principle, as it tends to show that for the rich, who can find bail and afford to forfeit it, there is no necessary corporal punishment imposed. Far wiser is it to adopt the principle that, in determining and adjusting bail, the test to be adopted by the court is the probability of the accused appearing to take his trial. This probability is to be tested in part by the strength of the evidence against the defendant, in part by the nature of the crime charged, and by the severity of the punishment which may be imposed, and in part by the character and means of the defendant. What to one is oppressive bail, to another is light; and of this the court is to judge." While the defendant is under bail for a hearing, and not in custody, and while we have no means of knowing whether, if held, he can or cannot give bail, merely in an advisory capacity, we think bail in the sum of $2000 would be sufficient if he is held for trial.

And now, March 21, 1927, rule granted Feb. 28, 1927, to show cause, etc., is discharged.

From Henry D. Maxwell, Easton, Pa.