## Commonwealth v. Jordan et al.

*A. F. Gilbert* and *William K. Miller*, District Attorney, for Commonwealth. *Jay G. Weiser*, for defendants.

POTTER, P. J., Jan. 9, 1930.—On Nov. 15, 1929, a buck deer was shot and killed in West Beaver Township, Snyder County, Pennsylvania, near where Charles Fry resides. There is no doubt but that this deer was killed out of season, but the query as to who killed it remains unanswered. The game warden for this district, Mr. Miles Reeder, who resides in Mifflinburg, Union County, swore out a warrant for the arrest of these defendants on this charge, as well as on the additional charge of hunting at night with an artificial or electric flashlight. This informant knows nothing of this offense personally, all his knowledge thereof coming from what he has been told by other persons. The defendants were convicted before the justice of the peace and were fined $500 each. They took an appeal to this court, allowed by the two associate judges, and we now have the case before us for disposal.

At the time of the hearing before us the Commonwealth interposed the objection that the matter having been adjudicated before a proper and legal tribunal, we had no right to hear testimony in the case, but were limited to errors appearing on the record. Generally speaking, this may be true, but this is one of the exceptions, as we view it.

An appeal must be "upon cause shown," not merely to review conclusions of fact; and the cause shown must be violation of some legal principle, some misconduct or oppression, which will appeal to the court as a reason for granting a further and fairer hearing: Com. *v.* Stokes, 4 Pa. Justices' Law

Repr. 163. To entitle the applicant to an appeal, the application must show either that he has some specific reason and well-grounded cause for complaint against the judgment, or that there is a substantial dispute in fact or in law of such character and moment as to entitle him to have a decision upon it in a higher court: Board of Health v. Crest Farm Dairy Co., 14 Pa. C. C. Reps. 119. And when an appeal has been allowed, the appellant is entitled to a hearing, unless the appeal is dismissed or stricken off; and he cannot be required to prove that he did not have a fair and impartial hearing before the magistrate before he will be permitted to prove that he is not guilty of the charge preferred against him: Com. v. Levine, 36 Pa. Superior Ct. 188. Where the defendant failed to attend the hearing, of course, allegations of denial are not sufficient, and where he does not assign good and sufficient reasons for his absence: Com. v. Menjou, 174 Pa. 25. An appeal will be allowed where a doubtful question is involved: Com. v. Saeger, 22 Pa. C. C. Reps. 169; when the court has a well-founded doubt as to the sufficiency of the legal authority for the proceeding, or the correctness of the conviction complained of: Com. v. Johnston, 1 Pa. C. C. Reps. 22.

There is no fast and loose rule as to when an appeal will be allowed. It is left chiefly to the discretion of the court, to the end that justice may be meted out, and we do not think the two associate judges erred in allowing this appeal. It can be allowed to correct matters of law and fact, and in this case we think there are some matters of both to be corrected. And the appeal thus allowed is to be heard de novo.

It is maintained by counsel for the defense that the information is fatally defective, in that it was made out and sworn to by a person who knows nothing whatever about the incidents and circumstances attending this alleged offense, except what he was told by other people.

Mr. Miles Reeder, the game warden for Snyder and Union Counties, makes the information and charges flat-footedly that these defendants "did on or about the 15th day of November, 1929, . . . willfully, maliciously, unlawfully hunt, and chase, and shoot, and kill and pursue, with intent to hunt, and chase, and take, and kill, and pursue, and wound wild birds and animals with firearms and device propelling by force a leaden pellett and bullet; and making use and taking advantage of any vehicle and artificial light or battery or other contrivance or device to hunt for and catch and take and kill and wound wild game, to wit, a buck deer with antlers, during the closed season for taking deer, contrary to the act of assembly in such case made and provided, being sections 701 and 704, Act of May 24, 1923, and amendments and supplements thereto."

This information is sworn to by Reeder as a bald fact, as though he had seen the whole occurrence. He does not even set out that it is upon information and belief, nor from whom he has received his information, nor that he expects to be able to prove it.

"A warrant is illegal, under section 8, article I, of the Constitution of Pennsylvania, where the affiant does not give the name of his informant nor the facts communicated to him, but contents himself with making the bald statement that the defendant, on or about July 5, 1898, committed adultery, as he, deponent, is informed and expects to be able to prove:" Com. v. Clement, 8 Dist. R. 705. In the case of Com. v. Green, 185 Pa. 641, 649, an information setting out "to the best of his knowledge, information and belief" was held sufficient, but we have no such averment in the information at bar. In re Charge to the Grand Jury, 3 Pitts. Rep. 174, it is said: "Where it is all hearsay or outside of his own knowledge, he (the informant) should so state,

setting out the facts of which he has been informed which induce him to believe the party charged is guilty, and that he believes such information to be true. . . ." An indictment will, on motion, be quashed where the complaint on which it is based is made "from information received" and not the personal knowledge of the complainant, and does not set forth the name of the informant or the facts communicated to the complainant or his belief in the information received: Com. v. Roland, 10 Dist. R. 410. In the case of Bates v. Rowley, 11 Phila. 210, the affidavit stated, "is informed and believes that the said Salmon B. Rowley has rights in action, money and evidences of debt which he unjustly refuses to apply to the payment of the above-mentioned judgment recovered against him by your petitioner." This was held too general, not sufficient, and the case was dismissed.

The insufficiency of this information was raised before us at the beginning of the hearing. We ruled that the hearing proceed and that we would determine this question when we made the final disposition of the case. From the trend of judicial opinion as herein cited it would seem as though the information in this case, made by Reeder, is not sufficient to support the case. It would seem as if he had personal knowledge of all the facts sworn to by him, when in point of fact he obtained all his information from others. He does not state the name of his informant, nor that he believes it to be true, nor that he expects to be able to prove the facts set out therein by him. There are well-established methods of legal procedure which must be adhered to in the administration of our criminal laws from which we cannot depart, and we think this is one of them. Measured by the decisions we have cited, we think this information is fatally defective. If information of this character were permitted, no one would be secure from arrest on the charge of others maliciously inclined. In the case of Com. v. Barr, 25 Pa. Superior Ct. 609, it is held the informant must be able to swear that he is informed of the statements made by him and that he believes them to be true. In the case of Com. v. Mallini, 214 Pa. 50, on the charge of murder, the county detective made the information "on information received," and it was held sufficient. (In the case at bar we do not have even that much, and it is not a case of murder.)

Nor do we think the evidence before us sufficient to sustain the conviction. The evidence is all circumstantial, and at that none of the best by any means. It must also be borne in mind that any and all reasonable doubts are to be resolved in favor of the defendant, and this well-known maxim applies to the court as well as to the jury. Every defendant stands before the court presumed to be innocent, and the burden rests upon the Commonwealth to prove him to be guilty beyond a reasonable doubt.

It seems, on the morning of Nov. 15, 1929, at about 5.30 o'clock, one Charles Fry and his small son arose, saw the headlights of an automobile approaching on the public road, and saw a flash-light spreading a light around over the fields along the highway. Fry and his boy went out of their house to the highway to within four or five feet of the passing automobile, which was a truck, saw three men in it, one driving, one alongside the driver, flashing the light over the fields, and the other standing in the box of the truck, behind the other two, with a gun in his hands. The Frys did not know any of these three men. Shortly after the truck passed them, they heard two shots fired. Fry went to get his truck to follow, and, in the meantime, the hunting truck passed out of his sight. Shortly afterward, Fry, who had trouble in getting his truck started, followed and came up with a truck driven by Ammon Jordan. He says he saw two men get off the Jordan truck and run away. He does not say that either of these two men had a gun. This was quite some distance

from his house. He followed the Jordan truck on to the home of Charles Gill, Jordan being in his truck alone. But how does Fry knew this was the same truck that passed his home at 5.30 in the morning? To fix this offense on the Jordans, Fry ought to be able to identify the Jordans as the men who drove by his house at 5.30 A. M. The buck was unlawfully killed, but what proof do we have that the Jordans were the persons who killed it, or assisted in so doing?

Jordan lives about ten miles east of the Fry place. He says that about 6.30 A. M. of that morning he and his son, Sortman Jordan, the other defendant, left his home to take some potatoes to Charles Gill. Mrs. Jordan and the son say they left their home at about 6.30 A. M. and had no gun with them. If they left their home at 6.30, how could they have been at Fry's place, ten miles away, and shot a deer at 5.30 A. M. of the same morning? It seems to us that the defendants have proven an *alibi*.

Jordan was seen by Fry at Gill's quite some time after the buck was killed, but that does not say he killed it. Many people drive this road, and the buck may easily have been killed by some one else, but we have no direct or good circumstantial evidence that Jordan killed it.

We do not think the proof is sufficient at all to hold the Jordans. We feel sure that if this case were left to a jury to decide as a matter of fact, there would be an acquittal, and it is a grave matter in our minds whether or not we would not direct a verdict of not guilty.

And now, to wit, Jan. 9, 1930, the judgment of the justice of the peace is reversed and the defendants are discharged.