HENDERSHOTT *v.* YOUNG, SUPERVISOR OF
MONTGOMERY COUNTY JAIL

[No. 130, October Term, 1955.]

*Decided March 8, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Arthur B. Hanson* and *J. Hodge Smith,* for appellant.

*Charles M. Irelan, County Attorney for Montgomery County* and *Assistant State's Attorney for Montgomery County,* by designation, and *C. Edward Nicholson, Jr.,*

*Assistant County Attorney for Montgomery County* and *Assistant State's Attorney for Montgomery County,* by designation, with whom was *Alger Y. Barbee, State's Attorney for Montgomery County* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

We granted petitioner's application for leave to appeal from the denial of *habeas corpus.* She is a practicing lawyer in Montgomery County and had formed the conclusion that Chapters 151 and 174 of the Acts of the General Assembly of 1955, which together repealed and re-enacted Sec. 92A of Art. 52, Code, 1951, had abolished the office of justices of the peace, and justices of the peace designated as committing magistrates, for Montgomery County and transferred all of their former authority, power and jurisdiction to the judges of the newly created People's Court for Montgomery County. Chapters 151 and 174 of the Acts of 1955 were passed pursuant to the authority of Art. 4, Sec. 41A and 41B of the Constitution of Maryland. Despite their passage the Governor appointed twenty-three justices of the peace for Montgomery County for the two year term beginning May 1, 1955, and designated four of them as committing magistrates, and the government of the county appropriated funds for their salaries and expenses. They have continued to function as they did before the effective date of the 1955 legislation.

In order to make a test case to establish that the justices of the peace, and those of them who are committing magistrates, were without legal power or authority, the petitioner, on July 10, 1955, parked her automobile in a street intersection in Montgomery County in violation of Code, 1951, Art. 66½, Sec. 210 (a) (3). A police officer witnessed this violation of the law. The lady being a resident of Maryland, the officer, as required by Code, 1951, Art. 66½, Sec. 284 (1955 Supp.), asked her to sign a summons agreeing to appear at the People's Court on a day named. Petitioner refused to sign the summons and was taken by the officer before Luther G.

Burdette, a justice of the peace who acted regularly as a committing magistrate, although not formally designated as such. It appears from the record that petitioner refused to post collateral of $6.45 and was thereupon committed to the custody of the sheriff of Montgomery County, bail being set in the commitment at $50.00. Almost immediately, that same Sunday afternoon, *habeas corpus* was sought from Judge Anderson of the Circuit Court for Montgomery County on the ground that petitioner was being illegally detained by the jailer of the Montgomery County jail, and a few minutes later, the judge released her on her own recognizance, pending a further hearing on the application for the writ. On July 18, argument was had before the circuit court, Judges Prescott and Anderson sitting. It was urged that petitioner's commitment to jail by the justice of the peace was illegal and void because the 1955 acts had abolished his office in Montgomery County and transferred all its jurisdiction and powers to the People's Court. On July 28, the court handed down an opinion in which it ruled on this contention and held that "* * * the General Assembly intended to grant unto the Judges of the Peoples Court for this County the same power and authority previously vested in those Justices of the Peace designated as trial magistrates, and the other Justices of the Peace, and not to take away from the Justices of the Peace sitting only as committing magistrates the limited powers now reposed in them. We, therefore, find that the action of the Justice of the Peace in issuing a warrant against the traverser was within the scope of his authority, so the petitioner will be remanded to the custody of the Sheriff until released by due process of law." We think that the court was right in refusing to issue the writ but that its action was predicated on the wrong grounds, and do not find it necessary or appropriate to decide the question decided below—the only question argued there or here.

Open to very serious doubt is whether petitioner could challenge by *habeas corpus* the authority of the justice

of the peace to act since he acted under color of title to a constitutional office and no court had declared that he was not legally able to do so, under the provisions of Chap. 321, Sec. 5 of the Acts of 1927, codified as Sec. 598 of the Code of Public Local Laws of Montgomery County (Flack, 1947), or otherwise. There are many decisions by able courts, holding that *habeas corpus* will not issue to challenge the effect or results of the action of a *de facto* judicial officer, including a justice of the peace. It may well be that the committing magistrate, who acted in the case before us, if not a *de jure* officer— as to which we express no opinion—was, at the least, a *de facto* officer. Constitution of Maryland, Art. 4, Sec. 42. *Kimble v. Bender,* 173 Md. 608, 620, *et seq.; Buckler v. Bowen,* 198 Md. 357. In *Kimble v. Bender* this Court held that a justice of the peace could be a *de facto* judicial officer whose acts were valid until a court had ruled that he was not entitled to act. In *Ex parte Henry Ward,* 173 U. S. 452, 43 L. Ed. 765, the Supreme Court ruled that where a person is convicted by an officer *de facto* and detained in custody in pursuance of his sentence, he cannot properly be discharged on *habeas corpus,* since the validity of the title of a judge to his office or his right to exercise judicial functions, cannot be determined on a writ of *habeas corpus.* A number of cases were cited in support of this proposition. See also *State v. Bailey,* 106 Minn. 138, for a similar holding, and the citation of a number of authorities to the same effect. This point was not argued in the briefs, or before us, and we do not find it necessary to decide it. We assume, without deciding, that in a proper case, an applicant for the writ of *habeas corpus* could test the right to act of a judicial officer, by whose process he was in custody. We are convinced for other reasons that the petitioner was not entitled to the writ.

Traditionally, and in practice, the writ of *habeas corpus* has been and is available only to liberate persons who are in actual, involuntary, illegal restraint. The courts have not lent themselves to the issuance of the

writ when restraint was theoretical or technical only, or was actual but by choice, and the real purpose of the writ was to test the validity of a law and not, in fact, to bring about release from involuntary confinement. It is clear that *habeas corpus* will not be granted one who is free on bail. As it is put in *Ex parte Powell* (Wash.), 70 P. 2d 778: "Unless there be an actual or physical restraint of a person, the writ of *habeas corpus* may not issue, and a person released from imprisonment on bail is not so restrained of his liberty as to be entitled to the writ. This statement of the law is supported by the overwhelming weight of authority." In *Palmer v. State* (Ala.), 54 S. 271, the Court said: "Indeed, we do not find a case in the books holding that a person out under bail is so restrained as to entitle him to the writ." Many courts agree with these holdings. See *Johnson v. Hoy,* 227 U. S. 245, 57 L. Ed. 497; *Rowland v. Arkansas,* 179 F. 2d 709, *certiorari* denied, 339 U. S. 952, 94 L. Ed. 1392; *Ex parte Robilotto* (N. J.), 94 A. 2d 207; 39 *C. J. S. Habeas Corpus,* Sec. 9. In *Commonwealth v. Baldi,* 92 A. 2d 257, the Superior Court of Pennsylvania held that one who had been refused *habeas corpus* and then had been released on bail, became subject to have his appeal dismissed as moot since he was at liberty at the time of the appeal. In *Ex parte Powell, supra,* the highest Court of the State of Washington observed that a defendant who has obtained his release on bail cannot thereafter maintain a proceeding for a writ previously begun.

Made plain also by the cases is the rule that if the confinement is voluntary, there is no need for the issuance of the writ and it will be denied. In *Ex parte Ford* (Calif.), 116 P. 757, the Court held that where the imprisonment involved is voluntary, as where an indicted person on bail procures his surrender solely to make a *habeas corpus* case, the writ will not issue. It said: "* * * the essential object and purpose of the writ is to inquire into all manner of involuntary restraint, as distinguished from voluntary, and relieve a person therefrom if such restraint is illegal. It was never contem-

plated, as anciently designed, or as at present guaranteed in the different jurisdictions of this country, that the writ should be invoked in behalf of a person who was not actually in restraint and involuntarily and illegally so * * *." The petitioner there procured the sureties on his bail bond to surrender him into the custody of the sheriff, in order to make a test case. The Court continued: "While it is true that the petitioner was in the custody of the sheriff for a short time pending his surrender and his admission to bail under the order of this court, it is quite clear that this surrender by his sureties was solely for the purpose of working an imprisonment upon which to base an application for this writ to which otherwise he would not be entitled. * * * But the right to a writ of *habeas corpus* to determine the illegality of a detention under criminal process is not intended to apply, and may not be invoked, when the imprisonment which is made the basis of its issuance is self-invited * * *." In *Ex parte Miller,* 110 P. 139, the Court of Appeals for the Third District of California noted that at the very moment the petitioner applied for the writ, he was in custody only momentarily and voluntarily for the purpose of obtaining a decision as to the validity of an ordinance. It held that such a practice was not to be countenanced by the Court and that *habeas corpus* should not issue. Similar observations and holdings are to be found in *Baker v. Grice,* 169 U. S. 284, 42 L. Ed. 748; *Commonwealth v. Green* (Pa.), 40 A. 96; *State v. Konshak* (Minn.), 162 N. W. 353. In *Sullivan v. State* (Fla.), 49 S. 2d 794, the Court said it was admitted at the hearing that the appellee had been released from custody on the recognizance of his attorney and that he had voluntarily submitted himself to the custody of the sheriff only temporarily and solely for the purpose of obtaining the writ, and continued: "Under such circumstances, the writ should have been denied." In *People v. Police Dept.,* 129 N. Y. S. 2d 257, those charged with serious crimes were granted bail that was excessive so that they could be in protective custody

pending trial. The imprisonment was longer than they had anticipated and they sought *habeas corpus*. Relief looking to prompt trial was suggested but it was held that they were not entitled to *habeas corpus* because their confinement was voluntary. In *People v. Vollmer*, 130 N. Y. S. 2d 468, the relator contended that an information against him failed to charge a crime. He was free on bail but requested cancellation of his bail in order to test the jurisdiction of the district court on the grounds stated. His request was granted and he surrendered himself to the custody of the sheriff. The Court said: "By its very nature, the writ of *habeas corpus* is directed to the person who detains another. If the detention or restraint is voluntary, there exists no necessity for the issuance of the writ. Here the relator was free on bail and under no restraint. His detention by the Sheriff has been self-contrived and self-imposed by his voluntary act in having his bail cancelled and his surrender to the Sheriff. These things he did, concededly, for the express purpose of using *habeas corpus* as a vehicle for challenging the sufficiency of the information. This he may not do." See also 39 *C. J. S., Habeas Corpus*, Sec. 10.

In the case before us, petitioner's detention and restraint, such as it was, was self-contrived and self-imposed. When she was observed by the police officer violating the statute by parking in an intersection, he was required under Code, 1951, 1955 Supp., Art. 66½, Sec. 284, to tell her what as a lawyer she knew already, that she had the absolute right (and under the statute the obligation) to sign the summons. If she had done so, she would have been at complete liberty, without any restraint whatever, save the necessity of attending the trial in the People's Court for Montgomery County on July 14, the date set. She refused to sign the summons with the deliberate purpose of bringing about her incarceration, so she could seek the writ of *habeas corpus* to test the status of the committing magistrate. Furthermore, under Code, 1951, Art. 66½, Sec. 283, peti-

tioner was entitled to deposit immediately with the justice of the peace, or the clerk of the justice of the peace, "* * * a sum determined by the Magistrate or Clerk to the Magistrate not to exceed the maximum amount prescribed as the fine for such offense * * *," in which case she could be released from custody, awaiting trial. As we have noted, the sum determined in this case was $6.45. The petitioner again refused to deposit the collateral which would have enabled her to go free, even as she had refused to sign the summons so as to make sure that she would be taken into custody. It is not contended that she would not have, in fact, been freed if she had put up collateral. An hour or so later, she was released by the Circuit Court for Montgomery County on her own recognizance, and has been at liberty ever since. The record does not reveal why the trial of the traffic charge did not occur on July 14, when it was scheduled, but the inference is permissible that the trial was delayed so that the circuit court could act on the application for the writ. In any event, we think that the circuit court need not have acted on the application for the writ once it had released the petitioner on her own recognizance. The recognizance could have been continued until the trial of the traffic case. There is no attack on the statute making what petitioner did a crime. Neither the constitutionality, the validity or the application of that statute is challenged. If petitioner's claim that the magistrate who committed her to jail (at her own invitation) had no power in law to do so, be assumed for the argument, there remains the fact that she was properly charged with committing a crime and that a magistrate or court of competent jurisdiction could try her for that offense. In *Parrish v. State*, 14 Md. 238, the Court observed that if one were before a court seeking *habeas corpus* to be discharged from alleged illegal arrest, and it appeared that the offense was committed in another county, "* * * he might have been recognized to appear before the court having jurisdiction of the offense." We think this observation is entirely

266

pertinent here and that the Circuit Court for Montgomery County at most should have continued the recognizance of the petitioner until she had been tried for the offense for which she was arrested. Above all, we think that by her own deliberate action in not signing the summons, she made the imprisonment that followed, such as it was, her own voluntary act, and under the principle of the cases referred to, was not entitled to the writ.

The lower court should have denied the writ for the reasons we have set forth and need not have and should not have gone into the question of the jurisdiction and powers of the justice of the peace.

The case is remanded for the entry of an order dismissing the petition for the writ on the grounds set forth in this opinion.

*Order affirmed, with costs.*