## Case No. 2,323.

### In re CALLICOT.

[8 Blatchf. 89.][1]

Circuit Court, E. D. New York. Dec., 1870.

HABEAS CORPUS—JURISDICTION OF CIRCUIT JUDGE—PARDON—CONVICTION UNDER REPEALED STATUTE.

1. The circuit judge has no jurisdiction to review, on habeas corpus, the judgment of the cir-

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

cuit court, on a conviction and sentence, on an indictment, on an allegation that the statute under which such sentence was imposed had been repealed before such sentence was passed.
[Cited in Re Osterhaus, Case No. 10,609.]

2. Where it appears that the person on whom such sentence was imposed has been pardoned unconditionally, and has had notice of the pardon, and is not restrained of his liberty, a writ of habeas corpus will not be granted to him, on such allegation, even though it does not appear that he has accepted the pardon.

3. The provision of the act of January 11, 1868 (15 Stat. 34), that, from and after the passage of that act, no distilled spirits should be withdrawn from any warehouse until the tax thereon had been paid, and that all acts and parts of acts inconsistent with such provision were repealed, did not operate to prevent conviction and punishment, after the passage of that act, for a previous offence committed in violation of section 42 of the act of July 13, 1866 (14 Stat. 162), by the executing or signing, or procuring to be executed, a fraudulent bond for withdrawing spirits from a warehouse, such bond being provided for by section 40 of that act, and in violation of section 30 of the act of March 2, 1867 (14 Stat. 484), in reference to a conspiracy to commit any offence against the laws of the United States.

[4. If a statute denouncing an offence is repealed, there can be no prosecution thereunder for an offence committed prior to the repeal.]
[See Anon., Case No. 475; U. S. v. Finlay, Id. 15,099.]

Theophilus C. Callicot a former collector of internal revenue, was convicted of conspiracy to defraud the United States (see U. S. v. Callicott, Case No. 14,710), and now petitions for a writ of habeas corpus to inquire into the legality of his imprisonment under the sentence imposed.
[A similar application was previously made to the circuit justice and denied. See In re Calicott, Case No. 2,311.]

Willard O. Bartlett, for petitioner.
Benjamin F. Tracy, Dist. Atty., for the United States.

WOODRUFF, Circuit Judge. In pursuance of an order to show cause, returnable before me on the 14th of December, 1870, the counsel for Theophilus C. Callicot, the petitioner, moved that a writ of habeas corpus issue, directed to the keeper of the Albany penitentiary, commanding him to bring the petitioner before me, together with the day and cause of his detention. The petition is addressed, not to the circuit court, but to me, in my capacity as judge. It alleges that the petitioner is imprisoned in the Albany penitentiary, under or by color of the authority of the United States, and of a sentence of the circuit court of the United States, pronounced in the eastern district of New York, on the 5th of June, 1868, and that such imprisonment is illegal, for the reason that the law under which such sentence was imposed had been changed and repealed before said sentence was passed, "and for other and sufficient reasons." The petition is dated, and was sworn to, on the 23d of May last. The motion was heard

before me on the 16th of December instant, to which day it had been adjourned, and, on the motion, the counsel for the petitioner produced, by way of supplement to or amendment of, the petition, an affidavit that the paper annexed thereto is a copy of the sentence referred to in the petition. It thereby appears, that, at a stated term of the circuit court of the United States of America for the eastern district of New York, held at, &c., on Friday, the 5th of June, 1868, the Honorable Samuel Nelson, Justice, and the Honorable Charles L. Benedict, District Judge, being present, in a prosecution by the United States against the petitioner, for the violation of the provisions of the internal revenue laws, contained in section 42 of the act of July 13th, 1866, and section 30 of the act of March 2d, 1867, the court sentenced the petitioner to pay a fine of ten thousand dollars, and be imprisoned for two years, and until the fine be paid, the sentence to be executed in the Albany penitentiary. [U. S. v. Callicot, Case No. 14,710.]

The attorney of the United States for the eastern district of New York appeared upon the motion, and produced the indictment and record of the trial upon which the judgment or sentence of the petitioner was pronounced, and also showed that, on the 1st day of this month of December, the president of the United States granted to the petitioner a full and unconditional pardon; and, by an acknowledgment of the receipt thereof, signed by the warden of the penitentiary, but in the handwriting of the petitioner, Callicot, showed that the latter had notice thereof on the 5th day of the said month. It is not claimed that the sentence has become inoperative by reason of any change made in the law since the judgment was rendered, but that, at the time of the trial and judgment, the acts charged, by reason of a change in the law after they were committed, did not constitute an offence punishable under the acts of congress named in the sentence.

Upon an examination of the statutes referred to, and of the authorities cited in the elaborate and ingenious brief of the counsel, and of other cases, I am of opinion:

1. That I have no jurisdiction to review the judgment of the circuit court of the United States for the eastern district of New York. That court had jurisdiction of the matters charged in the indictment, and to determine whether the acts therein alleged constituted an offence against the laws of the United States, and, by the aid of a jury, to try and determine whether the petitioner was guilty of those acts. From the judgment of that tribunal, no appeal lies to me as judge. No writ of error lies to me; and, if my opinion was, that the learned judges by whom the court was held when the judgment was pronounced committed an error, I have no power to revise or to reverse the judgment.

The supreme court of the United States have decided that they have no such power (Ex parte Watkins, 3 Pet. [28 U. S.] 193), although the allegation was, in the case before them, that the indictment did not charge an offence punishable criminally by the law of the land. The opinion of the court was delivered by Chief Justice Marshall, and he reviews the cases in which writs of habeas corpus had been applied for, and in some of which prisoners had been discharged, and he adds, that in no one of the cases in which they had been discharged was the prisoner confined under the judgment of a court. In that case, the argument was urged, as is, in effect, urged here, that, because the court in which the trial and judgment were had erred in holding that the matter alleged in the indictment constituted an offence under existing law, they exceeded their jurisdiction; and it was argued, on this point, that the offences charged in the indictment were not cognizable in the circuit court. Chief Justice Marshall says: "To determine whether the offence charged in the indictment be legally punishable or not, is among the most unquestionable of its powers and duties. The decision of this question is the exercise of jurisdiction, whether the judgment be for or against the prisoner. The judgment is equally binding in the one case and in the other, and must remain in full force, unless reversed regularly by a superior court capable of reversing it."

In that case, the judgment in question was rendered in the circuit court for the District of Columbia; and it is suggested, that the jurisdiction of that court was broader than that of the circuit court for the eastern district of New York. The former had jurisdiction of all offences cognizable in any court, and the latter has jurisdiction of all offences against the laws of the United States; but the principle stated by Chief Justice Marshall applies to both. The argument was, that the matter charged in the indictment constituted no offence either against the local laws, or the laws of the United States; and, yet, the opinion declares, that, to determine whether the offence charged was punishable or not, was within the unquestionable powers of the court. Accordingly, it was held, that the supreme court could not, upon habeas corpus, inquire whether that court misconstrued the law; and they declined to look into the indictment for that purpose. In like manner, the circuit courts of the United States have jurisdiction of all offences against the laws of the United States, and, to determine whether the offence charged in an indictment constitutes an offence against those laws, and is legally punishable, is within their jurisdiction and power.

After the decision of that case, Watkins, the petitioner, suffered imprisonment until the term of the sentence expired. The judg-

ment had also imposed a fine and costs, but did not adjudge that he be imprisoned until such fine be paid. Writs of fieri facias having been issued and returned nulla bona, writs of capias ad satisfaciendum were issued, and, by authority thereof, he was detained in custody. Thereupon, another application was made to the supreme court, for a writ of habeas corpus. It appeared that the prisoner was not brought into court on the return day of the writs, as required by the laws of Maryland, in force in the District of Columbia. It was then insisted, that the fines were excessive, and contrary to the constitution of the United States. But the court held, Mr. Justice Story pronouncing the opinion of the court, that, as the supreme court had no appellate jurisdiction to revise the sentences of inferior courts in criminal cases, they could not, even if the excess of the fine were apparent on the record, reverse the sentence—thus affirming the decision of the court in the previous case, and carrying it even further. But, on the ground that the prisoner ought to have been brought into court on the return day, and that the writs of fieri facias did not authorize the detention of the prisoner beyond that day, without a further commitment, they discharged him. They did not assume to declare any act or decision of the circuit court illegal or void, but decided that the process was functus officio after the return day. New writs were then issued, and Watkins was again arrested, and made another application for a habeas corpus, and, after argument, the court were equally divided, and discharged the rule to show cause. Afterwards, the circuit court, on a motion to quash these last named writs, granted the motion, and discharged the prisoner, on the ground that, having been once taken on ca. sa., he could not, being himself without fault, be taken a second time, on other writs, upon the same judgment. See [Ex parte Watkins] 7 Pet. [32 U. S.] 568, and Append. p. 670.

I find no case in which the supreme court have held any other doctrine, and no case is cited to me, in which that court, or any court of the United States, has countenanced the idea, that a judge can, under or by virtue of the writ of habeas corpus, practically reverse a judgment of the circuit court, for error, and discharge a prisoner from its sentence. In the case of Johnson v. U. S. [Case No. 7,418], the question came before Mr. Justice McLean. There, the petitioner was under sentence of the circuit court for the district of Michigan, and he insisted that, where a statute of the United States had peremptorily declared, "that no person shall be prosecuted, tried or punished, for any offence not capital, &c., unless the indictment * * * for the same shall be found * * * within two years from the time of committing the offence * * * provided, that nothing herein contained shall extend to persons fleeing

from justice," and it appeared on the face of the indictment, that the offence was charged to have been committed more than two years before the indictment was found, the proceedings and the sentence were null and void. Mr. Justice McLean denied the application on various grounds, declaring that the circuit court had jurisdiction and that this objection could not be raised on habeas corpus. The principle of these decisions was also stated in the supreme court, and applied to a person held under a commitment for contempt, in Ex parte Kearney, 7 Wheat. [20 U. S.] 38, where the court held, that they could not inquire into the sufficiency of the cause of commitment.

The case of Ex parte Yerger, 8 Wall. [75 U. S.] 85, which is cited as in conflict with these views, does not hold that, on habeas corpus, the judgment of the circuit court on the trial and conviction of a prisoner can be examined and the prisoner be discharged for error therein, but only, to use the language of the opinion, "that, in all cases where a circuit court of the United States has, in the exercise of its original jurisdiction, caused a prisoner to be brought before it, and has, after inquiring into the cause of detention, remanded him to the custody from which he was taken," the supreme "court, in the exercise of its appellate jurisdiction, may, by the writ of habeas corpus, aided by the writ of certiorari, revise the decision of the circuit court, and, if it be found unwarranted by law, relieve the prisoner from the unlawful restraint to which he has been remanded." There, the alleged prisoner was not held under any judgment or sentence of any court. He had been arrested, and was held for trial by a military commission, for a common law offence—murder. The circuit court had remanded him to the custody of the military officer; and the sole question decided by the supreme court was, that that court has jurisdiction, by habeas corpus, to review that decision and inquire whether he should have been remanded. There was no intimation of an intention to overrule the cases above cited, nor were they overruled. It was not suggested that the court had jurisdiction to review a judgment of the circuit court on the trial and conviction of a person alleged by indictment to have committed an offence against the laws of the United States.

2. It appears that the petitioner has been pardoned. The petition upon which the present motion was founded is dated, and was sworn to, in May last. The pardon is full and unconditional. How, then, can the petitioner be placed, by any order which I can make, more fully at liberty than he is at this moment? If, in May, he was under restraint, he is now as free to go and come where he will as is the counsel who made the motion; and it would seem to follow, that, unless the writ of habeas corpus

can be used and treated by me as a writ of error to review, and, in effect, reverse, the judgment, no occasion exists for issuing it.

The making of this motion, after the petitioner received notice of his pardon, though founded on a petition sworn six months ago, assumes that he remains at the penitentiary; but it is not shown nor suggested that he is not in fact at full liberty to go whenever and wherever he pleases. Indeed, as the case now stands, upon this motion, it in no wise appears that he is now under any restraint. If not, then I can do nothing to make him more free. If I issued the writ, the return must be, either that he is no longer at the penitentiary, or that he remains there, because he, of his own present will, chooses to do so, and not because he is restrained of his liberty. If he should choose voluntarily to come before me, I could only say, he is free to depart at his pleasure. In this view, the motion asks for what is unnecessary for the purpose for which the writ of habeas corpus is intended. The writ is provided and declared by statute to be allowed to prisoners. Restraint of liberty is the very ground of instituting inquiry into the cause of detention. If it appeared that, since the pardon, and notwithstanding the pardon, the warden of the penitentiary holds him in any restraint, a case would be presented for investigation; but that is not the case made by the papers before me, nor do I understand that to be even suggested by or on behalf of the petitioner. If, therefore, I had reached a different conclusion upon the point first considered, I should think it proper that some evidence of continued restraint be furnished.

It is urged, that a pardon is inoperative until accepted, and that it does not affirmatively appear that this petitioner has accepted the pardon. The opinion of Chief Justice Marshall in U. S. v. Wilson, 7 Pet. [32 U. S.] 150, is referred to. The decision in that case settles nothing upon the question whether, where an unconditional pardon is granted, which the grantee refuses to accept, he can, nevertheless, allege that he is restrained of his liberty, while the pardon remains unrevoked and ready for his acceptance at any moment he pleases, he having notice thereof. The decision and all that was said by the venerable and learned chief justice may be assumed, without abatement or qualification; but the circumstances of the case and the precise point decided are of some importance, when sought to be applied to this motion. There was there no application for a writ of habeas corpus, nor any claim by the grantee of the pardon that he was held in restraint of his liberty by reason of the offence which the pardon had forgiven. Wilson had been tried and convicted of robbing the mail and putting the life of the carrier in jeopardy on the 26th of November, 1829, and sentenced to suffer death on the 2d of July, 1830. He had also been indicted for obstructing the mail, and for robbing the mail, without the averment that he put the life of the carrier in jeopardy, by several other indictments, in one of which the robbery was charged to have been committed on the same day as the first-named, namely, November 26th, 1829. The president of the United States, on the 14th of June, 1830, pardoned him the crime for which he had been sentenced to death, remitting the penalty, "with this express stipulation, that this pardon shall not extend to any judgment which may be had or obtained against him in any other case or cases now pending before said court for other offences wherewith he may stand charged." Wilson had, on the 27th of May, previous, withdrawn his several pleas of not guilty and pleaded guilty to the other indictments, and when, in October following, the attorney for the United States moved for sentence for those offences, the court suggested an inquiry into "the effect of a certain pardon understood to have been granted," &c., and the counsel for Wilson appeared, and, on his behalf, waived and declined any advantage or protection which might be supposed to arise from the pardon referred to; and Wilson, in person, being called upon to say, whether he had anything to say why sentence should not be pronounced in the case then before the court, and whether he wished in any manner to avail himself of the pardon referred to, answered, that he had nothing to say, and that he did not wish, in any manner, to avail himself, "in order to avoid sentence in this particular case," of the pardon referred to. Questions were certified to the supreme court, and the point decided was, that the pardon, not having been brought judicially before the court by plea, motion or otherwise, ought not to be noticed by the judges, or in any manner to affect the judgment of the law.

It will be seen that the doubt here was, if the crime charged in the last-named indictment, as committed on the same day as that for which he had been pardoned, was in fact the same offence, though charged without the putting in jeopardy—whether it was not, necessarily, as matter of law, included in the pardon, notwithstanding the stipulation contained in the pardon, and notwithstanding, conformably to such stipulation, Wilson waived it, and declined to avail himself of it, as a protection against sentence for the inferior offence; and it was held that the court could not notice it, unless it was brought judicially before them, by plea, motion or otherwise. As his own voluntary act, Wilson could waive the benefit of it for that purpose, notwithstanding he had received the benefit of it according to its actual intent, and had been thereby saved from death. Chief Justice Marshall shows, that he could not be forced to accept it for the purpose in question; that a pardon may

be sometimes granted on a condition to which a prisoner may prefer the penalty of the offence; and that, like a deed, delivery is essential to its validity, and delivery is not complete without acceptance. The attorney general, in argument, suggested, that, even though a pardon might be unconditional, the prisoner might think it his interest to undergo the punishment, in order to make his peace with the public, or to pay a fine, &c., as evidence of his contrition. These views are sustained by numerous authorities cited from the English reports.

Now, all this may be conceded, and, at most, it is thereby granted, that a prisoner may accept or refuse an unconditional pardon, if he sees fit. It is not denied, that, when a writ of error lies from the judgment, the prisoner cannot, by a pardon granted, be prevented from prosecuting that writ, to obtain a reversal for error. He may prefer to have the judgment set aside and vacated or reversed; but that is not the office of the writ of habeas corpus in such a case, as I think is shown by the cases before referred to. If he prefers to refuse pardon, he is in no condition to say it is other than his voluntary act, whatever may be the motive; and, if the writ of habeas corpus, in the given case. is not, in effect, a writ of error, then it is not obvious that, by that writ, he can obtain a practical reversal of the judgment.

3. The motion might be decided without considering the several counts in the indictment, or inquiring whether any error was committed on the trial, or on the motion in arrest of the judgment, made before Mr. Justice Nelson and Judge Benedict. But I ought not, I think, to leave the impression that, in my opinion, the judgment and sentence were illegal. The subject was very fully discussed, and with most of the legal propositions of the counsel for the petitioner I fully concur. The important principle, that, where a statute imposing a penalty or punishment for an offence is repealed, a party cannot be tried, convicted and punished, after such repeal, for acts constituting such offence, although committed before the repeal of the statute, is not doubtful; and, if he have even been indicted before the repeal, he cannot lawfully be tried, convicted and punished after the repeal. Still further, if he have been tried, no judgment and sentence can be pronounced, provided, always, that offences committed prior to the repeal are not saved. So, also, the effect of a repeal by implication may be conceded to be the same as if the statute were repealed by express terms. These propositions were sustained by the counsel, by argument, and by numerous cases and authorities, from a very early period down to modern times, with copious citations therefrom. My view of the present case is in no conflict with those principles.

The question, however, whether the statute under which the petitioner was indicted, tried and sentenced, was repealed, either directly or by implication, before his trial and sentence, is the prior and important one by which to determine whether an error in that respect was committed on the trial and sentence, and in denying his motion in arrest of judgment, made before Mr. Justice Nelson and Judge Benedict.

It is most strenuously insisted, that section 42 of the act of 1866, referred to in the indictment and sentence, had been repealed, because, after the alleged offence of the petitioner had been committed, by the executing, or signing or procuring to be executed, a false or fraudulent bond, section 40 of the same act was, in 1868, repealed; and that, therefore, section 30 of the act of 1867, which makes a conspiracy to commit an offence against the United States a misdemeanor, was, so far as relates to the offence charged in this indictment, also repealed, or made inapplicable, for the reason that, after the act of 1868, no such bond as had been described in section 40 of the act of 1866 was required by law. Section 40 of the act of 1866 permitted the removal of spirits from a bonded warehouse under such rules and regulations, and upon the execution of such transportation bonds, or other security, as the commissioner of internal revenue, subject to the approval of the secretary of the treasury, might prescribe. Section 42 of the same act made the execution or signing of a false or fraudulent bond, permit, entry or other document, required by law or regulations, or the fraudulent procuring of the same to be executed, or the conniving at the execution thereof, by which the payment of any internal revenue tax or duty should be evaded, or attempted to be evaded, or which should be executed * * * for the purpose of placing in, or withdrawing from, any bonded warehouse, any spirits, or other merchandise for any purpose whatever, * * * punishable by imprisonment. Section 30 of the act of 1867 made a conspiracy to commit any offence against the laws of the United States, or to defraud the United States, if one or more of the parties should do any act to effect the object thereof, a misdemeanor, punishable by a penalty and imprisonment.

By the act of January 11, 1868, (15 Stat 34), it was enacted, "that, from and after the passage of this act, no distilled spirits shall be withdrawn or removed from any warehouse, for the purpose of transportation, * * * or for any other purpose whatever, until the full tax on such spirits shall have been duly paid to the collector of the proper district; and all acts and parts of acts inconsistent with the provisions of this act be, and they are hereby, repealed."

I understand the claim to be, that, although the execution and signing, or the procuring of the execution, &c., of a false and fraudulent bond, was an offence against the laws of the United States, and a conspiracy to commit

such offence was formed, and an act done to effect the object thereof, in the year 1867, yet, when, in 1868, it was enacted, that distilled spirits should not be removed from a warehouse until the tax should have been paid, the enactment operated not only as a repeal of the 40th section of the act of 1866, which had permitted a removal on the giving of a bond, but operated, also, to prevent the punishment of a previous offence committed by executing or procuring such a false or fraudulent bond, when a bond was confessedly required by law, and to prevent the punishment of a previous conspiracy to commit that offence.

The claim in this behalf naturally suggests an inquiry, by way of illustration. Suppose, by act of congress, the forgery or counterfeiting of notes or bills issued by the United States, by authority of law, for circulation as money, should be declared a misdemeanor, and made punishable by some specific penalty or term of imprisonment, and thereafter, while millions of such bills or notes are outstanding, by another act, the authority to issue bills "from and after the passage of" such latter act should be withdrawn, would the bills already outstanding have any less validity, and would a forgery or counterfeiting thereof be any less a misdemeanor, punishable under and by the specific punishment prescribed in the previous statute? I am not able to perceive that a law forbidding the removal of spirits from a warehouse from and after the passage of the act, until the tax is paid, has any operation upon bonds previously given on such removals, or upon an offence previously committed by the signing or execution of a false or fraudulent bond theretofore required as a condition of such removal, the removal having been made in reliance thereon. The offence was complete when committed, and was punishable as a misdemeanor. The law declaring the offence and prescribing the punishment is untouched. Bonds given theretofore upon removals are valid to secure the performance of their conditions. All that has been done is to enact that, after the passage of the last statute, removals upon bond shall not be permitted.

An application was heretofore made to Mr. Justice Nelson for a writ of habeas corpus by or on behalf of this petitioner, and his opinion,—8 Int. Rev. Rec. 169 [In re Calicott, Case No. 2,311],—is cited to me to the effect, that the act of 1868, which forbids the removal of spirits without the payment of the tax thereon, certainly repealed section 40 of the act of 1866, which permitted such removal on the execution of a transportation bond. Nothing can be more plainly true than that proposition. But that opinion contains no decision that the previous execution or procurement of false and fraudulent bonds was not, under the 42d section of the act of 1866, an offence, or that a previous conspiracy to commit that offence, and an act done to effect the object, were not punishable under

section 30 of the act of 1867, notwithstanding removals on bond were no longer permitted. He denied the motion on the ground that the fourth and fifth counts in the indictment were good, and were sufficient to sustain the conviction and judgment. But, having reached that conclusion, he says, in terms: "As this view, in my judgment, disposes of this application, we shall not look into the question as to what effect the repealing act of 1868, as it respects the transportation bond, has upon the other counts in the indictment, nor have we formed any opinion on the subject."

The motion should, I think, be denied.

---

CALLICOT (UNITED STATES v.). See Case No. 14,710.

CALLICOTT (McLEOD v.). See Case No. 8,897.

CALLIOPE, The (PARKER v.). See Case No. 10,729.

CALLISON (MOUNTE DIABLO MILL & MINING CO. v.). See Case No. 9,886.