LEONIDES DÍAZ DÍAZ, Petitioner, *v.* CÁNDIDA CAMPOS DE CÓRDOVA, ETC., Respondent.

No. 736. Submitted December 11, 1957.—Decided June 30, 1960.

*Santos P. Amadeo* and *Francisco García Quiñones* for petitioner. *Hiram R. Cancio, Secretary of Justice* (*J. B. Fernández Badillo, former Secretary of Justice, Arturo Estrella, Assistant Secretary of Justice,* and *Alfredo Archilla Guenard* and *William Fred Santiago, Fiscal* and *Assistant Fiscal of the Supreme Court,* respectively, on the brief), for The People.

MR. JUSTICE SERRANO GEYLS delivered the opinion of the Court.

The petitioner was convicted of violating Act No. 53 of June 10, 1948 (Spec. Sess. Laws, p. 170, 33 L.P.R.A., § 1471) [1] and we affirmed the judgment under the authority of *People* v. *Burgos,* 75 P.R.R. 517 (1953); *People* v. *López de Victoria,* 77 P.R.R. 904 (1955). Subsequently she filed a petition for habeas corpus in this Court. We issued the preliminary writ and authorized release on bail.

Petitioner alleges in this proceeding that the said Act No. 53 is unconstitutional because it is in conflict with the federal legislation on subversive acts, due to the fact that the United States Congress, upon approving the Smith Act, 18 U. S. C. § 2385, had the intention "to enter the field of punishing sedition against every government established in the United States, including the government of the United States, the government of any state, territory, district or possession thereof or the government of any political subdivision therein."[2] In view of the second problem arising

[1] This Act was repealed by Act No. 2 of August 5, 1957 (Spec. Sess. Laws, p. 516, 33 L.P.R.A. § 1471).

[2] The information against the petitioner was presented before the Constitution of the Commonwealth of Puerto Rico went into effect.

from this case and which we turn to consider, it is unnecessary to decide the question submitted by the petitioner.[3]

On July 19, 1957, the Governor of Puerto Rico granted to the petitioner an absolute and unconditional pardon—*cf. People* v. *Albizu*, 77 P.R.R. 843, 847 (1955)—of which she was notified by letter on the following 24th day. Informed of that fact, we ordered the petitioner to send us certified copy of said pardon and we gave both parties time to submit complementary briefs discussing the nature of the pardon and its effects on the questions raised and the final disposition of the case. Those documents appear in the record. We also held a hearing where the question was argued.

In its essential part the pardon granted to the petitioner provides the following:

> "I, LUIS MUÑOZ MARÍN, Governor of the Commonwealth of Puerto Rico, by virtue of the authority vested in me by the Constitution of Puerto Rico, do hereby grant unto the said Leonides Díaz Díaz, a pardon, relieving her from serving the sentence in the afore-mentioned case, for violation of Act No. 53 and restoring to her all her rights and prerogatives under the Constitution of the Commonwealth of Puerto Rico."

Petitioner says that the pardon does not affect in any way the final disposition of the case because she does not accept said pardon and without that acceptance the latter is not valid. The People alleges, on the contrary, that the pardon has eliminated the bail furnished and that by virtue thereof the petitioner is completely free. It adds that habeas corpus lies to obtain the release of a person in illegal

---

[3] Concerning the problem, examine *People* v. *Burgos, supra; Pennsylvania* v. *Nelson*, 350 U. S. 497 (1956); *Uphaus* v. *Wyman*, 360 U. S. 72 (1959); *Nostrand* v. *Balmer*, 335 P.2d 10, 19 (Wash. 1959); *Constitutional Law-Preemption of State Subversive Activities Law by Federal Law*, 19 La. L. Rev. 864 (1959); Rogge, *State Power Over Sedition, Obscenity and Picketing*, 34 N.Y.U. L. Rev. 817 (1959); Cramton, *The Supreme Court and State Power to Deal with Subversion and Loyalty*, 43 Minn. L. Rev. 1025 (1959); *Federal Preemption of Sedition Field*, 28 Geo. Wash. L. Rev. 457 (1960).

custody, that such condition is not present in this case, and that consequently, the appeal has become moot. For the reasons which we state below, we decide that the view of The People is correct and the petition should be dismissed.

Although the origin of the writ of habeas corpus is somewhat obscure, it has been used in England at least since the seventeenth century as a means to obtain the release of persons illegally imprisoned.[4] From that time up to the present by operation of law as well as by constant judicial practice, in England as well as in the United States and Puerto Rico, the existence of an unlawful restraint of the person's liberty has been considered indispensable for the issuance of a writ of habeas corpus.[5]

In *McNally* v. *Hill, Warden*, 293 U. S. 131, 137 (1934), the Federal Supreme Court, after an accurate examination of the origin of the writ in England and of its development in the United States, stated the following: ". . . There is no warrant in either the statute or the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention, and no suggestion of such a use has been found in the commentaries on the English common law. Diligent search of the English

[4] *The Freedom Writ-The Expanding Use of Federal Habeas Corpus*, 61 Harv. L. Rev. 657 (1948); Amadeo, *El Habeas Corpus en Puerto Rico* 5–8 (1948); Church, Habeas Corpus 2–33 (1893); Fellman, The Defendant's Rights 64–67 (1958).

[5] In California habeas corpus is used not only to obtain relief against an illegal restraint but also to release the prisoner from illegal imprisonment conditions. *Ex parte Collins*, 97 Pac. 188, 190 (1908); *Ex parte Byrnes*, 161 P.2d 376, 377 (1945); *Application of Chessman*, 279 P.2d 24, 27 (1955); *Application of Gonsálvez*, 311 P.2d 483, 486 (1957); *Application of Rye*, 313 P.2d 914, 915 (1957); *Habeas Corpus on Ground of Unlawful Treatment of Prisoners Lawfully in Custody*, 155 A.L.R. 145 (1945). As to federal jurisdiction, examine *Application of Hodge*, 262 F.2d 778, 780 (9th Cir. 1958); *Coffin* v. *Reichard*, 143 F.2d 443 (6th Cir. 1944); *Coffin* v. *Reichard*, 148 F.2d 278 (6th Cir. 1945); *Williams* v. *Steele*, 194 F.2d 32, 917 (8th Cir. 1952), *cert. denied*, 344 U.S. 822 (1955). We do not express any opinion on that question since it was not raised in the present proceeding.

authorities and the digests before 1789 has failed to disclose any case where the writ was sought or used, either before or after conviction, as a means of securing the judicial decision of any question which, even if determined in the prisoner's favor, could not have resulted in his immediate release.

"Such use of the writ in the federal courts is without the support of history or of any language in the statutes which would indicate a purpose to enlarge its traditional function . . . Without restraint of liberty, the writ will not issue . . . Equally, without restraint which is unlawful, the writ may not be used . . ." (Pp. 137–38.) And it added: "Wherever the issue has been presented, this Court has consistently refused to review, upon *habeas corpus*, questions which do not concern the lawfulness of the detention . . ." (P. 139.) Later, in *Eagles* v. *Samuels*, 329 U. S. 304, 307 (1946), after citing part of the language above-copied, the Court completed the doctrine affirming emphatically: "If the custody or restraint of liberty is terminated, without use of the writ, the case is finished." And very recently, in *Parker* v. *Ellis*, 28 L. W. 4321 (May 16, 1960), it was affirmed that "it is a condition upon this Court's jurisdiction to adjudicate an application for habeas corpus that the petitioner be in custody when that jurisdiction can become effective." See, also, *Heflin* v. *United States*, 358 U. S. 415, 421 (1959).

The fundamental principles set forth in those decisions have been applied by the Federal Supreme Court in diverse situations. For these reasons the writ has been denied when the restraint is purely moral—*Wales* v. *Whitney*, 114 U. S. 564 (1885); the incarceration is voluntary—*Baker* v. *Grice*, 169 U. S. 284 (1898); the restraint would have terminated before completion of the initial proceeding—*Ex parte Báez*, 177 U. S. 378 (1900); the petitioner may be released by other means—*In re Lincoln*, 202 U. S. 178 (1906); the peti-

tioner is at large on bail in the criminal case—*Stallings* v. *Splain*, 253 U. S. 339 (1920); *Johnson* v. *Hoy*, 227 U. S. 245 (1913); he has not begun to serve the sentence which he alleges is illegal—*McNally* v. *Hill, supra;* he is on parole —*Weber* v. *Squier, Warden*, 315 U. S. 810 (1942); he has served the sentence in its totality; *Parker* v. *Ellis, supra;* or when for any reason the petitioner is not in respondent's custody—*United States ex rel Lynn* v. *Downer*, 322 U. S. 756 (1944); *Kesling* v. *Humphrey, Warden*, 322 U. S. 759 (1944); *Zimmerman* v. *Walker*, 319 U. S. 744 (1943).[6]

In Puerto Rico the law of habeas corpus grants the right to prosecute the writ to "every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever." (34 L.P.R.A. § 1741.) The application must specify "that the person in whose behalf the writ is applied for is imprisoned or restrained of his liberty, the officer or person by whom he is so confined or restrained, and the place where . . ." (Section 1742.) "The writ must be directed to the person having custody of or restraining the person

[6] Similar situations have arisen in the lower federal courts. Examine, among others, *Darr* v. *Burford*, 172 F.2d 668 (10th Cir. 1949), *aff'd*, 339 U. S. 200 (1950); *Van Meter* v. *Sanford*, 99 F.2d 511 (5th Cir. 1938); *López* v. *Swope*, 205 F.2d 8 (9th Cir. 1953); *Witte* v. *Ferber*, 219 F.2d 113 (3rd Cir. 1955); *United States ex rel. Toran* v. *Thompson*, 192 F.2d 807 (2d Cir. 1951); *United States ex rel. St. John* v. *Cummings*, 233 F.2d 187 (2d Cir. 1956); *Reger* v. *Hudspeth*, 103 F.2d 825 (10th Cir. 1939); *Ex parte Beach*, 259 Fed. 956 (D. C. Cal. 1919); *Jones* v. *Biddle*, 131 F.2d 853 (8th Cir. 1942); *Kelly* v. *Aderhold*, 112 F.2d 118 (10th Cir. 1940); *Lowrey* v. *Clark*, 82 F. Supp. 1009 (D. C. Pa. 1948); *In re Rowland*, 85 F. Supp. 550 (D. C. Ark. 1949); 15 *Cyclopedia of Federal Procedure* (3rd ed. 1953), §§ 86.28–86.33. In the states the same situation prevails. As examples see *State* v. *Huffman*, 297 P.2d 831 (Ore. 1956); *Hyde* v. *Nelson*, 229 S. W. 200 (Mo. 1921); *State* v. *Cohen*, 201 Pac. 1027 (Nev. 1921); *Ex parte Wilken*, 115 N. W. 1075 (S. D. 1908); *Hendershott* v. *Young*, 120 A.2d 915 (Md. 1956); *Ex parte Rubly*, 261 S. W. 2d 4 (Ark. 1953); *When criminal or contempt case becomes moot so as to preclude review by higher court*, 87 L. Ed. 1201 (1943); *Habeas Corpus—Nature and Extent of Restraint Necessary to Warrant Issuance of Writ*, 42 Col. L. Rev. 1214 (1942); *Parolee's Right to Habeas Corpus*, 148 A.L.R. 1243 (1944); Fellman, *op. cit.* 68–69; *Right of one at large on bail to writ of habeas corpus*, 14 A.L.R. 344 (1921).

on whose behalf the application is made, and must command him to have the body of such person before the court or judge before whom the writ is returnable, at a time and place therein specified." (Section 1745.) The person upon whom the writ is served must answer stating "whether he has or has not the party in his custody, or under his power or restraint," the cause or authority of such imprisonment or if he has transferred the custody to another. (Section 1748.) The person "must bring the body of the party in his custody or under his restraint, according to the command of the writ . . ." (Section 1749.) "If no legal cause is shown for such imprisonment or restraint, or for the continuation thereof, such court or judge must discharge such party from the custody or restraint under which he is held." (Section 1753.) Otherwise, he "must remand him to custody or place him under the restraint from which he was taken, if the person under whose custody or restraint he was is legally entitled thereto." (Section 1759.)

It clearly arises from those provisions, and from others making up our law of habeas corpus, that the writ plays the same role in Puerto Rico that it played historically in England and the United States: to protect personal liberty against illegal detentions. Consequently, there must exist an illegal custody or restraint and a person who has illegally restrained the one in whose behalf the writ is requested. Our case law has constantly required compliance with those indispensable requirements. *Ex parte Soldini*, 4 P.R.R. 159, 165 (1903); *Ex parte Bird*, 5 P.R.R. 241, 265 (1904); *Ex parte Cintrón et al.*, 5 P.R.R. 87, 89 (1904); *Ex parte Díaz, alias "Martillo"*, 7 P.R.R. 153, 176 (1904); *Ex parte Dessus*, 11 P.R.R. 369, 371 (1906); *Rivera* v. *People*, 26 P.R.R. 161, 162 (1918); *López* v. *District Court*, 40 P.R.R. 478, 479 (1930); *Amadeo, op. cit.* at 18–20.

The specific problem which we must decide now—the effect of an unconditional pardon on a writ of habeas

corpus—has never been discussed by this Court. There are, however, several federal and state precedents. In *Hudspeth* v. *Tornello*, 128 F.2d 172 (1942), the Circuit Court reversed an order of a Federal District Court entered in a habeas corpus proceeding and whereby the petitioner's liberty was decreed. The latter urged the Federal Supreme Court to issue a writ of certiorari to review the said judgment. In *Tornello* v. *Hudspeth*, 318 U. S. 792 (1943), the Court decided the following: "The petition for writ of certiorari to the Circuit Court of Appeals for the Tenth Circuit is denied on the ground that the case is moot, it appearing that the petitioner has been pardoned by the President and that he is no longer in respondent's custody. *Weber* v. *Squier*, 315 U. S. 810." The judgment offers no other detail on the circumstances of the case.[7]

In the decisions of the lower federal courts there is a precedent that analyzes the problem fully, in the face of a situation of facts almost identical to the one at bar.[8] In *In re Callicot*, 8 Blatchf. 89, 4 Fed. Cas. 1075 (Cir. Ct. N. Y., 1870)—cited with approval in *Ex parte Báez*, 177 U. S. 378, 389 (1900)—the petitioner filed a petition for habeas corpus alleging that his incarceration was illegal because the judgment against him had been rendered pursuant to a law which was repealed at that time. In the hearing of the appeal, the federal prosecuting attorney proved that some days before, the President of the United States had granted to the petitioner a full and unconditional pardon and the latter had

---

[7] Although we are aware of the repeated admonitions of the Federal Supreme Court to the effect that a denial of certiorari does not create jurisprudence, we believe that such doctrine does not apply when the Court expressly bases its denial on a jurisdictional ground. See *Parker* v. *Ellis, supra; Factor* v. *Fox,* 175 F2d 626, 629 (6th Cir. 1949).

[8] We have not found, nor have we been cited, any decision of the states analyzing the specific problem under discussion. There are some decisions which declare the writ moot since the petitioner was granted a pardon, but they do not discuss the question. *Ex parte Davis,* 146 Pac. 1085 (Okl. 1915); *Ex parte Whitley,* 233 Pac. 769 (Okl. 1925); *Ex parte Ellard,* 43 S. W. 2d 931 (Tex. 1931).

received notice thereof. Upon deciding the question Judge Blatchford stated: "It appears that the petitioner has been pardoned. The petition upon which the present motion was founded is dated, and was sworn to, in May last. The pardon is full and unconditional. How, then, can the petitioner be placed, by any order which I can make, more fully at liberty than he is at this moment? If, in May, he was under restraint, he is now as free to go and come where he will as is the counsel who made the motion; and it would seem to follow, that, unless the writ of habeas corpus can be used and treated by me as a writ of error to review, and, in effect, reverse, the judgment, no occasion exists for issuing it.

". . . If I issued the writ, the return must be, either that he is no longer at the penitentiary, or that he remains there, because he, of his own present will, chooses to do so, and not because he is restrained of his liberty. If he should choose voluntarily to come before me, I could only say, he is free to depart at his pleasure. In this view, the motion asks for what is unnecessary for the purpose for which the writ of habeas corpus is intended. The writ is provided and declared by statute to be allowed to prisoners. Restraint of liberty is the very ground of instituting inquiry into the cause of detention. If it appeared that, since the pardon, and notwithstanding the pardon, the warden of the penitentiary holds him in any restraint, a case would be presented for investigation; but that is not the case made by the papers before me, nor do I understand that to be even suggested by or on behalf of the petitioner . . ." (Pp. 1077–78.)

The court then considered the effects that might be worked on the writ by petitioner's refusal to accept the pardon. And it added: "Now, all this may be conceded, and, at most, it is thereby granted, that a prisoner may accept or refuse an unconditional pardon, if he sees fit. It is not denied, that, when a writ of error lies from the judgment, the prisoner cannot, by a pardon granted, be prevented from prose-

cuting that writ, to obtain a reversal for error. He may prefer to have the judgment set aside and vacated or reversed; but that is not the office of the writ of habeas corpus in such a case, as I think is shown by the cases before referred to. If he prefers to refuse pardon, he is in no condition to say it is other than his voluntary act, whatever may be the motive . . ." (P. 1079.)

We believe that the reasoning contained in *In re Callicot* conforms perfectly to the fundamental principles that have historically governed the writ of habeas corpus and the particular demands of our law and precedents. For those reasons we must adopt it in this proceeding. There is however, a slight difference between the two situations. Contrary to the events in *Callicot,* the petitioner in the present case was at large on bail at the time when the prison authorities notified her that the Governor had granted her an unconditional pardon. That bond was authorized by this Court within the habeas corpus itself.[9]

It seems evident that bail so furnished can not have any effect on the question raised.[10] The officers in charge of the person of the petitioner had the obligation to terminate the state of custody upon immediate receipt of the executive order, unless they considered that the pardon was void and decided to resist the order. *Cf. Jamison* v. *Flanner,* 228

[9] It is of course obvious that bail furnished within a habeas corpus cannot be used as a ground for quashing the writ, on the ground that the petitioner is "at large." In such circumstances, the custody is temporarily suspended as part of the habeas corpus proceeding. If the writ is finally issued, the prisoner's liberty is full and unconditional. If it is denied, the custody can be recommenced legally. See *Eagles* v. *Samuels, supra,* and cases cited therein.

[10] In *Ex parte Whitley,* 233 Pac. 769 (Okl. 1925), it happened exactly as in the present case—the petitioner received a full and unconditional pardon after being released on bail authorized by the court of appeals, in a habeas corpus proceeding filed originally in said court and already submitted for final decision. The dismissal of the petition was ordered because of the pardon but the court did not discuss the problem. *Cf. Stephens* v. *State,* 239 Pac. 450 (Okl. 1925).

Pac. 82, 84 (Kan. 1924); *Weigel* v. *McCloskey*, 166 S. W. 944, 946 (Ark. 1914); *In re Moore*, 31 Pac. 980 (Wyo. 1893); *Judicial investigation of pardon by governor*, 30 A. L. R. 238 (1924). Such situation, of course, is not before us. There is no doubt that the executive authorities considered the custody of the petitioner terminated, as a question of fact, from the time she was notified of the pardon. Thus, the temporary suspension of custody produced by bail, became final by action of the executive officers. Actually, the petitioner was as free from that time as she would have been if, being a prisoner, she would have been set free on the streets upon notice of the pardon. There is absolutely nothing in the record to prove, or even suggest, that the executive authorities would have restrained the petitioner if we would have ordered the cancellation of bail at any time subsequent to that of the pardon,[11] or that they shall do so if as a result of this case we order said cancellation.[12] The only way by which the petitioner would find her liberty restrained would be to request and obtain her incarceration anew. But even in the absurdity that the jail officers agreed, habeas corpus would not lie because the restraint would be entirely voluntary. *Cf. Hendershott* v. *Young*, *supra; In re Callicot, supra.*

In view of the foregoing, we decide that the custody having ceased by reason of the full and unconditional pardon which was granted to the petitioner, there is no restraint of her liberty and consequently, the writ issued should be quashed since the case has become moot. *Parker* v. *Ellis*, *supra.*

---

[11] On the contrary, the Warden of the State Jail for Women in her letter to the petitioner sending her the Governor's order, said the following: "Accept my congratulations and may God help you to make good use of the privilege granted to you." And the Warden's legal representative in this Court, repeatedly says that the petitioner "enjoys full liberty" by virtue of the pardon granted to her.

[12] If such thing happened, the petitioner would be clearly entitled to apply to this Court for the issuance of a writ of habeas corpus.

This decision should in no way be interpreted as an abandonment of our firm attitude to override procedural technicalities to decide the cases on their merits. The procedural vice that we have considered impairs the very essence of the writ of habeas corpus and we cannot ignore it without at the same time denaturalizing the remedy completely. Habeas corpus, we repeat, by historical design and juridical formation, operates exclusively to release persons who are under illegal and involuntary custody and never to question, in absence of those requirements, the validity of a law. If custody ceases definitively by decision of the one who exercises it, the judicial power to determine its causes also ceases because habeas corpus exists to investigate the validity of restraint and not the validity of liberty.

For the reasons stated, it is impossible to decide the constitutional question raised by the petitioner in this proceeding, or whether or not she had to accept the unconditional pardon granted to her. The petitioner shall have the opportunity to make those contentions in the trial court if she files a motion to set aside the judgment.[13]

Judgment will be entered quashing the writ issued on the ground that the case is moot and ordering the cancellation of bail.

---

[13] In *People* v. *Cruzado,* 74 P.R.R. 872, 877 (1953), we decided that"... If a judgment deprives a defendant of his constitutional or substantial rights or if it is rendered without jurisdiction, he may attack the validity of said judgment directly by motion even if it is not in the nature of writ of *coram nobis*..." And we added: "... Since it concerned constitutional questions of a substantial character, the fact that the appeals from the judgments had been dismissed by this Court for abandonment, must not impede or bar the consideration of said motion." (P. 878.) See, also, *People* v. *Gerena,* 72 P.R.R. 211 (1951); *People* v. *Soto,* 72 P.R.R. 385 (1951); *Román* v. *Warden,* 78 P.R.R. 730 (1955).

MR. CHIEF JUSTICE NEGRÓN FERNÁNDEZ, concurring.

I agree that the case be dismissed as moot. I do not believe, however, that "the restraint of petitioner's liberty by the executive authorities terminated as a question of fact at the time when she was notified of the pardon." At that time, in my judgment, a new state of fact was not produced, but rather of law, as a result of the pardon, since the petitioner was paroled temporarily from the time she was released on the bail bond which, in the exercise of our power and subject to our final determination, was fixed by this Court in the habeas corpus proceeding filed by her.

The custody of the petitioner was substituted, under our authority, by a state of temporary liberty which terminated her physical custody by the prison authorities pending investigation of the right which entailed her full liberty. That temporary liberty ordinarily would have subsisted until the bail furnished would have been cancelled by this Court and her incarceration reordered, if the right to her definitive liberty which she claimed did not lie. But since there existed a full and unconditional pardon which blotted out forever the crime charged, *Emanuelli* v. *District Court*, 74 P.R.R. 506; *cf. People* v. *Albizu*, 77 P.R.R. 843, and which did not therefore, have to be accepted by the petitioner in order for it to cause a state of liberty, of full right, the present proceeding became moot, because of the pardon, since the fact of the liberty which she was temporarily enjoying was not altered by the latter. What was altered was the nature of the right on which her liberty was based and the character of the latter.

The pardon had the juridical effect of making final the state of liberty temporarily enjoyed by the petitioner by virtue of the bail furnished in the habeas corpus proceeding, and as a consequence thereof, said bail ceased to have any legal existence since the right to temporary liberty thereunder

was substituted by the better right to full liberty under the pardon granted. To this effect this Court would not have to order the cancellation of bail since the latter has ceased to exist at law.

---

MR. JUSTICE SANTANA BECERRA, concurring.

I agree that it is not necessary to decide the habeas corpus proceeding on the merits. I arrive at this conclusion by the reasoning I set forth below, and for which purpose I find it essential to point out certain facts.

In this habeas corpus proceeding petitioner Leonides Díaz Díaz raised the issue of the nullity and legal nonexistence of Act No. 53 of June 10, 1948—33 L.P.R.A. § 1471—under which she was sentenced to two to ten years in the penitentiary. We issued the writ on May 21, 1956. The hearing took place on June 12, 1956 and both parties were heard. On July 10, 1957, petitioner requested that bail be fixed while the case was pending. Once the Prosecuting Attorney, who opposed in writing, was heard, an order was issued, on July 18, 1957, setting petitioner temporarily at liberty on bail, until the case was decided on the merits. The bail bond as it was approved by the Court included, for all obligation, the appearance of petitioner in Court and that she would at all times abide the orders and pronouncements that may be rendered, that she would be present when the judgment be entered, and that she would acquiesce in its performance, whether it be rendered by the lower or the appellate court. Besides the obligation afore-mentioned, petitioner, as a matter of fact, was temporarily left in the enjoyment of absolute liberty without any other restriction. On December 23, 1957, the Court, on its own initiative, entered the following order:

"Defendant is hereby ordered to send to the Secretary of this Court a certified copy of the pardon granted to petitioner by the Honorable Governor of Puerto Rico. A term of thirty

days, counted from today, is granted to the parties to file complementary briefs in which they shall argue the nature and effects, if any, which said pardon may have upon the issues raised and upon the final determination of this case."

In compliance with the above order both parties presented their respective positions. Petitioner reported the fact that she was notified by two communications of a pardon granted by the Governor, Hon. Luis Muñoz Marín, on July 19, 1957; the first one dated July 24, 1957, was sent to the Industrial School for Women, through its Directress, and the second one, dated July 29, was addressed by the Directress to the petitioner at Barrio Santana of Arecibo. Notwithstanding this, petitioner maintains on appeal to this Court that the pardon does not affect in a legal way the issues which have been raised, nor the final disposition of the habeas corpus proceeding since said pardon does not have any validity whatsoever without her acceptance, and therefore, it cannot render this case moot. She then affirms that she will not accept the pardon since it would imply that she was guilty of the crime for which she was sentenced, a culpability which she never admitted and does not admit now, for which reason her refusal to accept the pardon constitutes for her a matter of conscience and human dignity. That if they force her to accept it, thereby rendering the habeas corpus proceeding moot, it would constitute a violation of the constitutional rights guaranteed by the Constitution of the Commonwealth of Puerto Rico, among them, a violation of the right to freedom of conscience and of thought. Finally, she states that the pardon does not protect her rights as it does not blot out the criminal record of the crime for which she was sentenced, which would be the case if the sentence is set aside by the pending habeas corpus proceeding.

On the other hand, the Prosecuting Attorney assumes the position, citing the cases of *People* v. *Albizu*, 77 P.R.R. 843 and *Emanuelli* v. *District Court*, 74 P.R.R. 506, that the par-

don blots out forever the conviction of the offense committed, so that pardonee is thereafter as innocent as if he had never been convicted; that the defendant enjoys at the present moment an absolute liberty by virtue of the full and unconditional pardon granted her; that the effect of the pardon is *to obliterate the cause* and with it any bond posted by petitioner and that if she relies upon said pardon to enjoy the liberty granted by it *she has accepted it*, for her imprisonment being legal, an allegation of coercion does not lie for this motive, upon her accepting the pardon. Finally, he argues that petitioner being at liberty and not being *restrained* thereof, there is no practical use whatsoever in deciding the proceeding. The Prosecuting Attorney cites local authorities as well as decisions of other courts—among them the case of *In re Callicot*, 4 Fed. Cases 1075 (1870), which dealt with a habeas corpus proceeding wherein a pardon was granted—concerning the historic principle that a habeas corpus proceeding does not lie when the person is not actually held in restraint of his liberty; and as it was said in *López* v. *District Court*, 40 P.R.R. 478, the writ of habeas corpus is essentially and historically a proceeding to obtain the liberty of a person *under custody.*

The issue arising in this case, given the facts found therein, is not confined to the well-known classic principle that neither the issuance nor the decision of a habeas corpus proceeding will lie when the person is not held in restraint of his liberty, excepting, of course, those cases in which he is set at liberty on bail. Once we considered petitioner's right to liberty and issued the writ while she was under custody, decreeing thereafter that she remain at liberty until we determine her rights, any consideration as to whether it was necessary to keep her under physical restraint in order for the proceeding to lie, disappeared. The issue created regarding the principle afore-mentioned and which does not occur in our prior decisions nor in the citations presented by

the Prosecuting Attorney, including the case of *In re Callicot*, *supra*,[1] is that upon considering in this case whether the case should be decided on the merits or not because of the absence of any restraint of petitioner's liberty, it is impossible to determine as far as the facts are concerned, whether petitioner is at liberty because of the order of this Court dated July 18, 1957, and the bond furnished, or whether she is so because of the pardon granted to her. The Prosecuting Attorney seems to assume that petitioner avails herself of the pardon to enjoy her liberty and therefore has accepted it. But the record does not justify such an inference, not only because of petitioner's position rejecting it but also because it does not present facts which will warrant an implied acceptance thereof. On the other hand, the pardon granted did not bring about *in fact* the absence of restraint of liberty enjoyed by petitioner. In the previous circumstances the controversy as to whether or not the case has become moot, places us before a strict legal problem—and not of fact on the basis of the material granting of the pardon—which is solved by the legal effect of the pardon on the state of liberty enjoyed by petitioner when she was notified of it. By virtue of this legal effect petitioner's liberty, which was one of fact only, temporary and subject to termination, became a state of liberty at law, permanent and irrevocable. There would be no reason to decide the proceeding regarding petitioner's final liberty, which is the only relevant issue in proceedings of this nature, and a sentence from this Court could not grant petitioner a more absolute and permanent liberty.

Yet, the problem does not end here, since petitioner has raised in this proceeding the question of the validity of the pardon as a question of law, because of the absence of the

[1] According to the facts found therein the case dealt with the initial phase of whether or not a habeas corpus proceeding would lie for a person who was already pardoned and who according to the judge's words if he remained in prison did so of his own present will and that he was then free to leave when and to whatever place he wanted.

condition of acceptance, wherefore she denies it any legal effect. Undoubtedly, her argument is based upon authorities of great weight. See, for example: *United States* v. *Wilson*, 8 L. Ed. 640, 7 Peters 32 U. S. 150; *Burdick* v. *United States*, 236 U. S. 79; *Ex parte Prout*, 86 Pac. 275, 277 (Idaho); *Weigel* v. *McCloskey*, 166 S. W. 944 (Ark.); *Chapman* v. *Scott*, 10 F.2d 156; 10 F.2d 690 (C. A. 2), *cert. denied*, 270 U. S. 657; *Carpenter* v. *Lord*, 171 Pac. 577, 580 (Oregon); *People* v. *Frost*, 117 N. Y. S. 524, 528 (N. Y.); Annot., 52 A. L. R. 835; Fordham Law Review 255–269, vol. 6; 26 Col. L. Review 624; *cf. Biddle* v. *Perovich*, 274 U. S. 480.

I do not intend to engage myself in an elaborate discussion of the issue thus raised, and certainly frequently debated. This Court has rendered pronouncements about the effects of an absolute and unconditional pardon on the person thus pardoned, which in my opinion render a discussion futile. The first pronouncement regarding acceptance as a condition to an executive pardon under the Federal Constitution was made in 1833 by Chief Justice Marshall in the case of *United States* v. *Wilson*, *supra*. Perhaps it is convenient to point out the legal issues and the circumstances under which the pronouncements were made, if we consider that a long line of decisions has thereafter relied thereon. According to the facts, Wilson was accused of several offenses to which he pleaded not guilty and a verdict of guilty was rendered against him as to one of the offenses and he was sentenced to death. Later, Wilson withdrew the pleas of not guilty to all the indictments against him and pleaded guilty. Pending the execution, President Jackson granted him a pardon for the crime for which he was sentenced to death, with the express stipulation that the pardon should not extend to any other judgment which may be had or obtained against him in any other case now pending before the court wherein he may stand charged. Months later, the Attorney of the

United States moved the court for sentence upon Wilson, but the court wanted to inquire as to the effect of a certain pardon, understood to have been granted since the conviction of this indictment. The District Attorney made the point that the defendant could derive no advantage from the pardon without bringing the same judicially before the court by plea, motion or otherwise. The judges were thereupon divided in opinion on this point and ordered the question to be certified to the Supreme Court. Mr. Chief Justice Marshall said: (7 Peters 159).

"... Whether it [pardon] could avail without being pleaded ...is substantially the same question with that presented in the second point, which is, 'that the prisoner can, under this conviction, derive no advantage from the pardon, without bringing the same judicially before the court by plea, motion or otherwise.'

"The Constitution gives to the President, in general terms, 'the power to grant reprieves and pardons for offenses against the United States.'

"As this power had been exercised from time immemorial by the executive of that nation whose language is our language, and to whose judicial institutions ours bear a close resemblance; we adopt their principles respecting the operation and effect of a pardon, and look into their books for the rules prescribing the manner in which it is to be used by the person who would avail himself of it.

"A pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed. It is the private, though official act of the executive magistrate, delivered to the individual for whose benefit it is intended, and not communicated officially to the court. It is a constituent part of the judicial system that the judge sees only with judicial eyes, and knows nothing respecting any particular case, of which he is not informed judicially. A private deed, not communicated to him, whatever may be its character, whether a pardon or release, is totally unknown and cannot be acted on. The looseness which

would be introduced into judicial proceedings would prove fatal to the great principles of justice, if the judge might notice and act upon facts not brought regularly into the cause. Such a proceeding, in ordinary cases, would subvert the best established principles, and overturn those rules which have been settled by the wisdom of ages.

"Is there anything peculiar in a pardon which ought to distinguish it in this respect from other facts?

"We know of no legal principle which will sustain such a distinction.

*"A pardon is a deed, to the validity of which delivery is essential, and delivery is not complete without acceptance.* It may then be rejected by the person to whom it is tendered; and if it be rejected, we have discovered no power in a court to force it on him." (Additional emphasis.)

Citing English authorities all to the effect that a pardon ought to be pleaded, Mr. Chief Justice Marshall concluded that the pardon, not having been brought judicially before the lower court by plea, motion or otherwise, it could not be noticed by the judges. The doctrine, sometimes reasoned out in different ways—that acceptance of the pardon constitutes an intrinsic element of the same essential to its validity and legal effect—is based upon the pronouncement emphasized by me and which recurs again and again in numerous decisions, although it is interesting to note that such a proposition was not presented nor decided as a matter of fact in the *Wilson* case. The pardon had been accepted as a question of fact. This contention was not presented nor decided in those terms in the *Callicot* case either.

It was in *Burdick* v. *United States, supra,* (1915), where it was actually decided in unequivocal terms, and as a legal principle, that a pardon which has not been accepted even though absolute and unconditional, is not valid and has no legal effect whatsoever. The Court relied entirely upon the pronouncement made by Mr. Chief Justice Marshall—the private act of the executive which requires the delivery and

acceptance of the pardon—although the concept of acceptance was developed far beyond that which appears in the pronouncement itself.[2]

Twelve years later, in 1927, the case of *Biddle* v. *Perovich, supra,* was decided wherein a capital punishment was commuted by the President for another of life imprisonment.[3] Expounding the contention of the Solicitor General for the United States, that in no case was the acceptance of an unconditional pardon necessary and that it had never been adjudged as such before the *Burdick* case, *supra;* that the English cases turn on the necessity that the pardon should be pleaded, but that when it was brought to the judicial knowledge of the Court ". . . and yet the felon pleads not guilty and waives the pardon, he shall not be hanged, . . .

---

[2] It is possible that the facts in this case provide an explanation therefor. Burdick is the City Editor of a newspaper. He declined to testify before the Grand Jury as to the sources of information concerning certain articles published in his paper regarding frauds committed against the Custom House and which the Grand Jury investigated, alleging that his declaration might tend to incriminate him. Thereupon he was remanded to appear at a later day and he was handed then a pardon which had been obtained for him from President Wilson. This document set up as facts that Burdick had refused to testify on the ground that his testimony would tend to incriminate him, that the district attorney desired to use his testimony for the purpose of determining whether any employee of the Treasury Department at the Custom House had been betraying information obtained by him in an official capacity, and in the belief that Burdick would again refuse to testify on the ground of incrimination, the President granted him a full and unconditional pardon for all offenses against the United States which Burdick had committed or might have committed in connection with the afore-mentioned articles and in connection with any other article or matter concerning which he may be interrogated, thereby absolving him from the consequences of such criminal acts. Burdick declined to accept the pardon or testify, insisting that it might tend to incriminate him. He was punished for contempt and committed to custody until he decided to testify. The motives behind this pardon and other circumstances around this case may perhaps explain certain reasonings by Mr. Justice McKenna. (236 U. S. p. 90.)

[3] The power of the President to commute a sentence falls under the general power to grant pardons. The Federal Constitution, different from ours, does not grant this power separately.

(English citation by Jenkins, 129 Third Century, Case 62), Mr. Justice Holmes speaking on behalf of an unanimous Court said:

> "We will not go into history, but we will say a word about the principles of pardons in the law of the United States. A pardon in our days is not a private act of grace from an individual happening to possess power. It is a part of the Constitutional scheme. When granted it is the determination of the ultimate authority that the public welfare will be better served by inflicting less than what the judgment fixed. [Citation] Just as the original punishment would be imposed without regard to the prisoner's consent and in the teeth of his will, whether he liked it or not, the public welfare, not his consent, determines what shall be done..."

I would rather believe as does Mr. Justice Holmes, that the power of executive grace of our Governor is a function of the people's sovereignty, entrusted to him, under the constitutional structure we adopted, as a prerogative of his high office which he holds without the intervention of any extraneous dictates whatsoever, and when he exercises this function, it carries with it the determination, as Holmes points out, that the public interest has thus been better served. Constitution, Art. I, §§ 1, 2; Art. IV, § 4. Since the function exercised by the Executive under the constitutional scheme is one of public power for the general welfare and not a private act, I am inclined to believe that the acceptance or non-acceptance of an absolute pardon, which does not impose any condition whatsoever to be accepted or complied with by the pardonee in return for the same, as a requisite for its validity and legal effect, should be out of consideration.

But there remains another point, perhaps the most sensitive one. Petitioner contends, following a line of authority, that a pardon does not wipe off the guilt, that its voluntary acceptance implies the acceptance of a guilt which she rejects, and that under these circumstances to force it on her

against her will is to coerce her conscience. The decisions show that, apart from the description given by Mr. Chief Justice Marshall, this has practically been the other consideration behind the theory of the acceptance of a pardon even though it be unconditional, to give it effect. It has been said that to force a pardon on a person would oblige the latter to accept the guilt although he be innocent. As the Supreme Court stated in *Burdick, supra*, ". . . Circumstances may be made to bring innocence under the penalties of the law. If so brought, escape by confession of guilt implied in the acceptance of a pardon may be rejected,—preferring to be the victim of the law rather than its acknowledged transgressor—preferring death even to such certain infamy. This, at least theoretically, is a right and a right is often best tested in its extreme. 'It may be supposed,' the court said in *United States* v. *Wilson* (p. 161), 'that no being condemned to death would reject a pardon; but the rule must be the same in capital cases and in misdemeanors...'."

There exist two lines of authority in open conflict, one which holds that the pardon only reaches the punishment, relieving the pardonee from serving his sentence and of the legal effects thereof; and another which holds that it also reaches the guilt, blotting out every vestige of the commission of a crime. In *Emanuelli* v. *District Court*, 74 P.R.R. 506, 513, we adopted one of these two criteria and we said:

"... Pardon blots out the very existence of his guilt so that in the eyes of the law he is thereafter as innocent as if he had never committed the offense..."

See: *Downs* v. *Porrata*, 76 P.R.R. 572. In harmony with the concept which I have of the function of the executive grace under our Constitution, which would not require the acceptance of a total pardon without conditions, I adhere also to the previous pronouncement which in my opinion should continue to be the norm in this jurisdiction as it is

in many others. *Cf. Commonwealth* v. *Cain*, 28 A.2d 897 (Pa.); *Diehl* v. *Rodgers*, 32 Atl. 424 (Pa.); *Marsh* v. *Garwood*, 65 So. 2d 15 (Fla.); *Taran* v. *United States*, 266 Fd.2d 561 (C. A. 8); *People* v. *Hardwick*, 269 Pac. 427 (Cal.); *State* v. *Swenson*, 76 A.2d 150 (Md.); *Ex parte Anderson*, 229 P.2d 633 (Ore.); *Ex parte Garland*, 71 U. S., 4 Wall, 333,; *In re Ringnalda*, 48 Fed. Supp. 975 (Cal.); *United States* v. *Palermo*, 17 F.2d 534 (C. A. 2); *In re Stephenson*, 10 So. 2d 1 (Ala.).

The absolute pardon granted in this case having the effect of blotting out petitioner's conviction and her guilt, the reason for the other basis which would render necessary its acceptance disappears, as well as the sensitive problem of conscience which petitioner alleges.

In view of the foregoing argument, I understand that the pardon was valid and that it became legally effective as soon as it was notified to petitioner and the petitioner having obtained her full and irrevocable liberty by virtue of the effect which the said pardon had at law, it is not necessary, as I said before, to render a judgment which could never grant petitioner a greater liberty.

